# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LARRY D. RICE, JR., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 09-310 (RMC) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Police officers John Stathers and Derek Starliper entered an abandoned house in Northeast Washington, D.C. with their guns drawn and told everyone to "freeze." When Plaintiff Larry Rice heard "freeze," he was in a back room and he attempted to flee out the window. Officer Stathers entered the back room and stopped Mr. Rice from leaving. A struggle ensued, and Officer Stathers shot Mr. Rice. Mr. Rice was arrested and charged, but later the charges were dismissed by the prosecutor. As a result, Mr. Rice filed suit asserting constitutional violations, including the claim of arrest without probable cause, and tort claims including claims of false arrest. On the eve of trial, Defendants have filed a motion for summary judgment with regard to the false arrest claims. Mr. Rice opposes. As explained below, the motion will be granted.

## I. FACTS

Mr. Rice alleges that on April 23, 2008, he was in the back room of a house located at 5827 Fields Place, NE, Washington, D.C. He heard a police officer say "freeze" to Joseph Maxwell who was in the front room of the house. At that time, Mr. Rice opened the window in the

back room and began climbing out. When he had managed to get his head and one leg out of the window, Officer Stathers entered the back room with his gun drawn. With his gun in one hand, Officer Stathers grabbed Mr. Rice's leg with his other hand. Officer Stathers shot Mr. Rice in the abdomen. Subsequently, the officers arrested Mr. Rice.

Detective Ali Roberts signed a criminal complaint against Mr. Rice on May 2, 2008, charging Mr. Rice with a violation of D.C. Code § 22-851(b) (intimidating, impeding, interfering with and retaliating against a government official engaged in the performance of his duties).[1] *See* Defs.' Mot. to Dismiss [Dkt. # 35], Ex. A. at 1. On January 21, 2009, the Superior Court dismissed the felony charge at the request of the prosecutor. *See id*., Ex. B (Dismissal Praecipe).

As a result of the gunshot wound, Mr. Rice sustained severe injuries including a lacerated liver and diaphragm. He underwent emergency surgery and remained in the hospital for more than one month. He developed pneumonia while in the hospital.

As a result of the foregoing, Mr. Rice filed this suit against the District of Columbia,

---

[1] The criminal complaint was based on an attached affidavit signed by Officer D. Randolph. Officer Randolph's affidavit sets forth a different version of the facts:

> Officer Stathers observed Defendant Rice attempting to hide behind a dresser. Officer Stathers identified himself and ordered Defendant Rice to show him his hands. Defendant Rice turned and began to assault Officer Stathers. Defendant Rice attempted to take Officer Stathers['] service weapon. Officer Stathers and Defendant Rice struggled over the service weapon. The weapon discharged, striking Defendant Rice in the abdomen. Defendant Rice continued to resist. Officer Starliper joined in the struggle. The officers and Defendant Rice crashed partially through a rear window. Officer Stathers and Officer Starliper were able to gain control of Defendant Rice and place him in handcuffs.

*See* Defs.' Mot. to Dismiss, Ex. A. at 2.

Officer Stathers, and Officer Starliper. The Amended Complaint includes three counts alleging false arrest:

> Count VI – False Arrest (against Officer Stathers);
>
> Count VII – False Arrest (against Officer Starliper); and
>
> Count VIII – False Arrest (against the District of Columbia).

Am. Compl. [Dkt. # 29]. The Amended Complaint also alleges that the Officers violated 42 U.S.C. § 1983 by arresting Mr. Rice without probable cause in violation of the Fourth Amendment. *See id.*, Counts XIX & XX. Defendants seek summary judgment on these claims.[2]

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving

---

[2] Counts XIX and XX also include the claim that the Officers used excessive force when they arrested Mr. Rice. Defendants do not seek summary judgment on the issue of excessive force.

party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

The elements of a common law false arrest claim and a claim for an unreasonable arrest in violation of the Fourth Amendment[3] are "practically identical." *Barnhardt v. District of Columbia*, 723 F. Supp. 2d 197, 214 (D.D.C. 2010). The requisite elements in both claims are that the plaintiff was arrested against his will and that the arrest was unlawful. *McCarthy v. Kleindienst*, 741 F.2d 1406, 1413 (D.C. Cir. 1984). While unlawfulness is "presumed" where the arrest was without a warrant,[4] the presumption is rebutted if the defendant can show that there was probable cause for the arrest. *Id.*; *see also Magwood v. Giddings*, 672 A.2d 1083, 1086 (D.C. 1996) (probable cause is a valid defense to a claim of false arrest).

Two key exceptions to the Fourth Amendment warrant requirement are at issue in this case: (1) police may briefly detain a suspect upon reasonable suspicion and (2) police may make a

---

[3] The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause." U.S. Const. 4th Amend.

[4] "Justification can be established by showing that there was probable cause for arrest of the plaintiff on the grounds charged. A lesser showing can also be made, namely that the arresting officer had reasonable grounds to believe a crime had been committed and that plaintiff's arrest was made for the purpose of securing the administration of the law (*i.e.*, that the officer acted in good faith)." *Dellums v. Powell*, 566 F.2d 167, 175 (D.C. Cir. 1977) (citation omitted).

warrantless arrest if they have probable cause to believe that a crime has been or is being committed.

First, police can stop and briefly detain an individual if the officer has reasonable, articulable suspicion that the person was involved in or is wanted in connection with a crime or if the officer believes that "criminal activity is afoot" even if the officer lacks probable cause. *United States v. Bailey*, 622 F.3d 1, 5 (D.C. Cir. 2010) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *United States v. Jones*, 584 F.3d 1083, 1086 (D.C. Cir. 2009). This type of brief detention, called a "*Terry* stop," takes place only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a person. *Terry*, 392 U.S. at 19 n.16. *See California v. Hodari D.*, 499 U.S. 621, 627-28 (1991) (a person has been "seized" within the meaning of the Fourth Amendment, if under the circumstances a reasonable person would have believed that he was not free to leave).

Another exception to the warrant requirement exists where an officer has probable cause to believe that a criminal offense has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Probable cause to arrest exists if the arresting officer had sufficient information to support a reasonable belief that the suspect has committed or at that time was committing an offense. *United States v. Catlett*, 97 F.3d 565, 573 (D.C. Cir. 1996) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

"The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). To determine whether the police had reasonable suspicion to make a *Terry* stop or probable

cause to make an arrest, a court must examine the totality of the circumstances viewed from the perspective of a reasonably prudent office in light of the officer's training and experience. *Catlett*, 97 F.3d at 573 (citing *Illinois v. Gates*, 462 U.S. 213, 230-32 (1983)) (probable cause); *see also Jones*, 584 F.3d at 1086 (reasonable suspicion). The officers' subjective intentions and actual motives are not relevant to a determination of probable cause, so long as their actions were objectively reasonable. *United States v. Brown*, 334 F.3d 1161, 1172 n.8 (D.C. Cir. 2003) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

Determining whether probable cause exists is a common sense determination, which turns on the "practical considerations of everyday life." *United States v. Gilliam*, 167 F.3d 628, 633 (D.C. Cir. 1999) (citing *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). Thus, "while each fact standing alone may be insufficient, the combination of all the facts can establish probable cause, and certain conduct that may appear innocent to a lay person may have entirely different significance to an experienced law enforcement officer." *Gilliam*, 167 F.3d at 633 (citations and internal quotation marks omitted).

Probable cause may emanate from the collective knowledge of the police. *United States v. Hawkins*, 595 F.2d 751, 752-53 n.2 (D.C. Cir. 1978); *Milline v. United States*, 856 A.2d 616, 620 (D.C. 2004); *see Tetaz v. District of Columbia*, 976 A.2d 907, 914 n.7 (D.C. 2009) (court should apply collective knowledge doctrine to determine if police action was justified in a case concerning fast moving events involving a number of police officers in different locations); *In re M.E.B.*, 638 A.2d 1123, 1129 (D.C. 1993) (police knowledge is aggregated where officers were cooperating in an investigation, as shown by the fact they communicated directly with one another or through a dispatcher). Where the material facts are undisputed, the question of probable cause

is a legal question. *Ornelas*, 517 U.S. at 697; *Enders v. District of Columbia*, 4 A.3d 457, 469 (D.C. 2010).

A suspect's actions during a *Terry* stop may provide probable cause for an arrest of the suspect. For example, in *United States v. Jones*, 584 F.3d 1083, a police officer had reasonable suspicion to believe that an individual was violating the law by drinking alcohol in public. He saw the suspect with a styrofoam cup, walking more quickly than the rest of the crowd when the police approached, and heard him say "I ain't doing nothing. I'm just drinking." 584 F.3d at 1087. The officer conducted a *Terry* stop by calling to the suspect, "Come here." *Id*. The officer approached the suspect; the suspect then pushed the officer and reached toward his own waist band. The officer and the suspect struggled. When the suspect was wrestled to the ground, the police found a gun in his waistband. *Id*. at 1085. The court found under the totality of the circumstances the *Terry* stop was reasonable. *Id*. at 1088. Further once the suspect pushed the officer and reached for his waistband, the officer had probable cause to arrest the suspect for assaulting the officer. *Id*.

The case at hand is analogous to *Jones* as described in detail below. Upon reasonable suspicion of drug trafficking, Officer Stathers stopped Mr. Rice by calling, "freeze." When Mr. Rice fled, Officer Stathers had probable cause to arrest him for disobeying a police order and for resisting and opposing a police officer.

The critical facts related to the stop and arrest of Mr. Rice are undisputed. Police officers on an undercover operation watched suspects engage in a suspected drug transaction and then enter 5857 Fields Place. The undercover officers relayed this information to police officers who were members of an arrest team, including Officers Starliper and Stathers. Officer Starliper testified at his deposition that undercover officers informed him that they had observed a suspected "hand to

hand narcotics transaction" in front of 5857 Fields Place, an address being used to facilitate narcotics sales. *See* Defs.' Mot. for Summ. J. [Dkt. # 59], Ex. B ("Starliper Dep.") at 25. Officer Stathers testified similarly that an undercover officer advised him that there were two individuals inside 5857 Fields Place who were involved in a narcotics transaction. *Id*., Ex. A ("Stathers Dep.") at 21-22. Both Officers Starliper and Stathers testified that the undercover officers described the two men as black males, one wearing a white shirt and jeans and the other wearing a yellow t-shirt and jeans. Starliper Dep. at 26; Stathers Dep. at 22. Officer Starliper entered the house at Fields Place and in the living room encountered the man described as wearing a white t-shirt and blue jeans. Starliper Dep. at 27. Officer Stathers entered the house as well with his gun in his hand. Stathers Dep. at 25.

Mr. Rice testified in his deposition that he went to the address at Fields Place, a place he knew to be a crack house, to sell stolen cell phones. Defs.' Mot. for Summ. J., Ex. C ("Rice Dep.") at 70, 72, 76. Mr. Rice indicated that he entered the house, said hello to someone named "Mr. Maxwell" in the front room, and proceeded to the back room. *Id*. at 90-92. Then, when he heard the police yell "freeze, get on the floor" to someone else, Mr. Rice opened the window in the back room. *Id*. at 92. While he was climbing out the window, Officer Stathers entered the back room and told Mr. Rice to freeze. Mr. Rice did not:

> Q. When he told you – asked you to freeze, did you?
>
> A. No. I was on – I was still trying to proceed out the window.
>
> Q. Is it fair to say you were trying to flee?
>
> A. Yes.
>
> Q. Why were you trying to flee?
>
> A. The police was in the house and I – I believe I had a misdemeanor

warrant on me.[5]

*Id*. at 102.[6] During the ensuing struggle at the window ledge, Officer Stathers' gun went off and he shot Mr. Rice. The police then lowered Mr. Rice the rest of the way out of the window and arrested him.

Under these circumstances, the police had reasonable suspicion to stop Mr. Rice, as the undercover officers reported that they observed Mr. Rice engaging in a drug transaction at a known crack house. Officers Stathers and Starliper are imputed to have the collective knowledge of the team of police officers who were cooperating in the undercover operation and the arrest. They received information from the undercover officers before entering the house at Fields Place. When Officer Stathers entered the back room of the house, he told Mr. Rice to freeze, thereby conducting a lawful *Terry* stop. Mr. Rice admits that he continued to flee. Because he continued to flee, Officer Stathers then had probable cause to arrest him. An officer has probable cause to arrest a suspect when he has reason to believe the individual has committed or is committing a crime. *See Catlett*, 97 F.3d at 573. Officer Stathers personally observed Mr. Rice commit the crime of

---

[5] There was an outstanding bench warrant out on Mr. Rice for possession of cocaine in violation of D.C. Code § 23-1327(b).

[6] Mr. Rice also testified:

> Q. And why were you trying to get out of the window?
> A. Because I heard the police come in the house.
> Q. And tell us exactly what you heard?
> A. I heard "freeze, get down on the floor."
> Q. And then what exactly did you do?
> A. I kept going through the window.

Rice Dep. at 100; *see also id*. at 111 (Mr. Rice testified that "I turned around it was "freeze," I kept going through the window.")

failing to comply with a lawful order of a police officer and the crime of resisting and opposing a police officer. *See* 18 D.C.M.R. § 2000.2 ("No person shall fail or refuse to comply with any lawful order or direction of any police officer . . . ."); D.C. Code § 22.405(b) ("Whosoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer . . . while that law enforcement officer is engaged in the performance of his or her official duties, shall be guilty of a misdemeanor . . . .").[7]

Mr. Rice opposes the motion for summary judgment in a confused and misleading brief. Mr. Rice alleges that "the only information that the officers had at the time that Plaintiff was handcuffed to support a proper arrest was Officer Stathers' allegation that Plaintiff had assaulted him," *see* Pl.'s Opp'n at 5, completely disregarding the fact that Mr. Rice admitted in his deposition that he heard Officer Stathers tell him to freeze and that he continued to flee out the window. Mr. Rice also erroneously conflates the issue of false arrest with the issue of excessive force, by arguing that "the unlawfulness of Plaintiff being shot and/or handcuffed may be based upon excessive use of force or an unjustified use of force." *See* Pl.'s Opp'n [Dkt. #63] at 7. Plaintiff points out that reasonable suspicion does not justify an arrest, citing *Terry*, 392 U.S. 1, but fails to recognize that reasonable suspicion justifies a *Terry* stop and probable cause justifies an arrest. Counsel's confusion is further evidenced by the statement that "Defendants' focus on the issue of probable cause is not controlling of a claim for false arrest." *See* Pl.'s Opp'n at 9. This statement is simply

---

[7] The Officers also had probable cause to arrest Mr. Rice for drug trafficking based on the observations of the undercover team. Because probable cause is determined at the time of arrest, information subsequently obtained is not relevant. *Washington v. United States*, 414 F.2d 1119, 1122 (D.C. Cir. 1969). For the purpose of determining probable cause, the Officers cannot rely on the fact that Mr. Rice had entered the crack house to sell stolen phones or the fact that there was an outstanding bench warrant for Mr. Rice's arrest because the police did not discover these facts until after the arrest took place.

incorrect; probable cause is a defense to a claim of false arrest. *Magwood*, 672 A.2d at 1086. Officer Stathers and Officer Starliper had reasonable suspicion to stop Mr. Rice as well as probable cause to arrest him for drug trafficking, failing to comply with a police order, and resisting arrest. Thus, the Officers have a valid defense to the claims of false arrest and the claims of violation of the Fourth Amendment based on the allegation of arrest without probable cause.

## IV. CONCLUSION

As explained above, Defendants' motion for summary judgment on the claims relating to false arrest and arrest without probable cause [Dkt. # 59] will be granted. Counts VI, VII, and VIII alleging false arrest will be dismissed, as will the portion of Counts XIX and XX that alleges arrest without probable cause.[8] A memorializing Order accompanies this Memorandum Opinion.

Date: February 24, 2011         /s/
                                ROSEMARY M. COLLYER
                                United States District Judge

---

[8] The portions of Counts XIX and XX that allege excessive force in violation of the Fourth Amendment remain.