UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY D. RICE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-310 (RMC) |
| ) | |
| THE DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION REGARDING MEDICAL BILLS AND NEGLIGENCE CLAIMS**

This case concerns the arrest and shooting of Larry D. Rice, Jr., by Officers John Stathers and Derek Starliper of the District of Columbia Metropolitan Police Department. Trial begins next Monday, February 28, 2011. As a result of arguments at the pretrial conference on February 10, 2011, the Court allowed the parties to file additional motions *in limine* — regarding the admission into evidence of Mr. Rice's medical bills and regarding Mr. Rice's claims of negligence and negligent infliction of emotional distress. The Court's reasoning on the outstanding motions are addressed here; to assist the parties' trial preparation, the Court has already issued a Minute Entry Order notifying them of its holdings. *See* Minute Order filed Feb. 24, 2011. For background facts, the reader is directed to the Court's earlier Memorandum Opinion regarding Defendants' motion for summary judgment on claims relating to false arrest. *See* Mem. Op. [Dkt. # 67].

## I. Plaintiff's Motion to Introduce Medical Bills At Trial

Mr. Rice was seriously injured when he was shot in the stomach. He underwent surgery, and he spent two episodes in Washington area hospitals. The costs for his medical care were paid or will be paid by D.C. Medicaid; those in excess of what Medicaid pays were (or will be) written off by the providers.[1] Mr. Rice moves to introduce "any and all bills . . . to assist the jury in determining not only the amount of damages to award Plaintiff, if any, but also to assist them in assessing the severity of the injuries sustained by Plaintiff," in his case in chief against the District of Columbia and the Officers. Pl.'s Mot. to Introduce Medical Bills [Dkt. # 60] at 1. He argues that "the jury would . . . be precluded from rendering a fair award if they did not have the benefit of considering all expenses incurred as a result of this incident." *Id*. at 5. The Court will deny the motion.

### A. Introduction of Medical Bills Against the District of Columbia

Plaintiff may not introduce the medical bills as part of his case against the District of Columbia. The medical bills do not represent "expenses incurred" by Plaintiff as a result of this incident. *See McAmis v. Wallace*, 980 F. Supp. 181, 185 (W.D. Va. 1997) (*cited with approval in Hardi v. Mezzanotte*, 818 A.2d 974, 983 (D.C. 2003)). Presenting these bills to the jury as if Plaintiff were responsible himself for their payment invites confusion and a potentially erroneous verdict.

Further, "the injured party must establish personal liability, at some time, for th[e] amount'" he seeks to recover for medical expenses. *Hardi*, 818 A.2d at 983 (quoting *McAmis*, 980 F. Supp. at 185). "[I]f all medical expenses have been (or will be) paid by Medicaid, plaintiff . . .

---

[1] The District of Columbia was able to obtain information from its agency that administers the Medicaid program, indicating that Medicaid paid for the treatment provided to Plaintiff. *See* Defs.' Opp'n [Dkt. # 65] at 2.

*shall not* seek recovery of such expenses" against the District of Columbia. *District of Columbia v. Jackson*, 451 A.2d 867, 874 (D.C. 1982) (emphasis added).[2] Only if a plaintiff shares liability for his medical bills beyond what Medicaid pays does the court "require special findings by the jury as to the amount of medical expenses awarded as part of each verdict [and] . . . then . . . allocate to each special finding the amount, if any, paid (or to be paid) by Medicaid," entering a judgment that deducts the Medicaid amount(s) so allocated. *Id.* at 874. Plaintiff invokes the "collateral source doctrine," which provides that an injured party may recover in full from a wrongdoer regardless of anything the injured party may obtain from a collateral source wholly unconnected with the wrongdoer, such as from an insurer. *Hudson v. Lazarus*, 217 F.2d 344, 346 (D.C. Cir. 1954). Medicaid, however, is not a collateral source vis-a-vis the District of Columbia, as Medicaid is not "wholly independent" of the District. *Jackson*, 451 A.2d at 874. The District established and administers its Medicaid program with some matching funds from the federal government. *Id*. Thus, Plaintiff may not introduce his medical bills against the District of Columbia.

### B. Introduction of Medical Bills Against the Officers

A different analysis applies when considering whether Plaintiff may introduce his medical bills as part of his case in chief against the Officers, who are sued individually. The District argues that it has conceded that the Officers were acting within the scope of their authority and that they, therefore, should be treated as the District of Columbia under the collateral source rule. The Court is not persuaded that the alleged torts and constitutional violations[3] for which Plaintiff seeks

---

[2] Notably, the District of Columbia was the only defendant in *Jackson*, even though the claims were based on an alleged false arrest and assault by police officers.

[3] The Court recognizes that the District of Columbia cannot be held liable for the alleged constitutional torts of police officers on the basis of *respondeat superior*. *Monell v. Dep't of Social*

to hold the Officers personally responsible can be squeezed into that tent.

A "[d]efendant is not permitted to avoid compensating his victim merely because [he] was able to qualify for Medicaid benefits." *McAmis*, 980 F. Supp. at 185. When a defendant is not the government entity funding Medicaid, a Medicaid beneficiary/plaintiff can recover what Medicaid paid for his treatment as if Medicaid were private insurance. *Id.* However, a plaintiff may not recover amounts in excess of what Medicaid paid; a plaintiff cannot recover for charges written off by medical providers. The collateral source rule does not apply to write off amounts because the plaintiff is not personally liable for such amounts and "did not incur the Medicaid discount." *Id*. at 184-85.

Thus, Mr. Rice might recover from the Officers "the actual costs of medical care borne by Medicaid. These are the amounts that [a plaintiff] has incurred for the purposes of the collateral source rule." *Id.* at 185 (*citing Rayfield v. Lawrence*, 253 F.2d 209, 213 (4th Cir. 1958) and *Manko v. United States*, 830 F.2d 831, 836 (8th Cir. 1987)). Plaintiff, however, indicates that he does not know what actual costs were paid by Medicaid; all he has are the gross bills from medical care providers. These gross bills are not admissible at trial.[4]

---

*Servs.*, 436 U.S. 658, 694 (1978); *Morgan v. District of Columbia*, 550 F. Supp. 465, 468 (D.D.C. 1982), *aff'd without op*., 725 F.2d 125 (D.C. Cir. 1983) (Table).

[4] At the pretrial conference, the Court specifically directed Plaintiff to provide a release for medical records to Defendants so that they could obtain his full Medicaid record to find out exactly how his medical bills were handled. *See* Tr. of Feb. 10, 2011 Pretrial Conference (informal copy) at 31 ("[H]ave him sign a release so that D.C. can obtain information. Then we'll know before trial whether his bills have already been paid."); at 31-32 ("Let's not argue about whether there was [a release] two years ago. We need to know whether or not the plaintiff's bills for these hospitalizations have already been covered one way or another."); at 31 ("[P]roduce an up-to-date release from Mr. Rice so that the government can find out [if his medical bills have been paid]"); at 35 ("Would you get a release from your client so that D.C. can find out what's been paid and what has not."). Plaintiff never provided the release ordered by the Court. Trial starts in one more

Plaintiff seeks to present "any and all" medical bills to the jury and asks the Court to determine, after trial, what amounts should be deducted from a jury award because it was already, or will be, paid by Medicaid. *See* Pl.'s Mot. [Dkt. #60] at 2 (citing *Reid v. District of Columbia*, 391 A.2d 776, 778 (D.C. 1978) (whether a setoff is proper is a matter of law for the court's determination and the court should adjust the jury's verdict accordingly), *vacated in part on other grounds*, 399 A.2d 1293 (D.C. 1978). But that is not the question vis-a-vis a non-governmental defendant. Under the analysis of *McAmis*, Plaintiff may recover from the Officers (and not from the District) *what Medicaid paid* and no more. To allow a more generous recovery would be an impermissible windfall to Plaintiff.

*Reid v. District of Columbia* is not to the contrary. In *Reid*, evidence that the plaintiff had failed to apply for Medicaid benefits, and thus, arguably, failed to mitigate his damages, was admitted before the jury in error. Even if the plaintiff's bills were fully paid by Medicaid, the court found that this fact still should not have been presented to the jury because it was "an invitation for the jury to speculate that if they find no liability, plaintiff will still be reimbursed for his losses through Medicaid. There was no evidence that Medicaid would actually pay the bills . . . ." 391 A.2d at 781.

In accordance with *Reid*, the Court also will preclude the parties from mentioning Medicaid to the jury. *Reid*, 391 A.2d at 781. There is no need. The jury can be told that there is no

---

business day. Plaintiff's failure to provide a signed release is baffling. Counsel breathes not a murmur of explanation or excuse — or any information on the subject at all, even though they assured the Court they would obtain specifics. Plaintiff's failure to supply a release for his medical records, could be the subject of sanctions. *See* Fed. R. Civ. P. 37(b)(2)(A) (if a party fails to obey an order to provide or permit discovery, the court may issue further just orders). The Court declines to sanction Plaintiff at this juncture as it is time to concentrate on trial.

dispute about (or the parties have stipulated to) Plaintiff's medical expenses. Without specifying the amount at issue, the jury can be asked to decide whether Plaintiff should be awarded compensatory damages for his medical expenses as against the Officers. His gross medical bills will be excluded from evidence against all Defendants and no mention will be made to the jury by either party of medical costs, payments, reimbursements, Medicaid, or insurance.

## II. Plaintiff's Motion for Appropriate Relief on Negligence Claims

A little history of this case is necessary to present this issue. The initial Complaint in this matter was filed on February 18, 2009. *See* Compl. [Dkt. #1]. Count IV alleged negligence against the District of Columbia; Count V alleged gross negligence against Officer Stathers; Counts IX to XI alleged malicious prosecution against each Officer and the District of Columbia; Counts XII to XIV alleged intentional infliction of emotional distress against each Officer and the District of Columbia; and Counts XV to XVI alleged negligent infliction of emotional distress against each Officer and the District of Columbia. The District of Columbia responded with a pre-discovery motion to dismiss certain counts on May 5, 2009. The Court entered its Opinion and Order on June 17, 2009, dismissing, *inter alia*, Counts IV (negligence), V (gross negligence), and IX to XI (malicious prosecution). *See* Mem. Op. & Order [Dkt. ## 14 & 15]. The District of Columbia answered the Complaint on June 30, 2009, and discovery began in August 2009, and, after numerous extensions, was completed in June or July 2010.

However, an Amended Complaint was filed on December 22, 2009. The Amended Complaint set forth twenty-one counts, including Counts IV and V alleging negligence against Officer Stathers and the District of Columbia; Counts IX and X, alleging malicious prosecution; and Counts XIV and XV alleging negligent infliction of emotional distress against Officer Stathers and

the District of Columbia. *See* Am. Compl. [Dkt. # 29]. By Opinion and Order dated June 7, 2010, the Court *again* dismissed the negligence counts and *again* dismissed the malicious prosecution counts. *See* Mem. Op. & Order [Dkt. ## 39 & 40].

Before the pretrial conference, Defendants submitted a motion to dismiss the negligent infliction of emotional distress claims, *see* Defs.' Supplemental Mot. to Dismiss [Dkt. # 54], which the Court denied. *See* Order [Dkt. # 58].

After the pretrial conference, Plaintiff filed a "Motion for Appropriate Relief" on February 15, 2011, asking the Court to reconsider its June 2010 dismissal of Counts IV and V of the Amended Complaint. Plaintiff asks the Court to permit him to proceed to trial on a theory that Officer Stathers negligently used his gun and that the District of Columbia is liable for such negligence under the doctrine of *respondeat superior*. Plaintiff sought this relief in light of the Court's denial of Defendants' motion to dismiss the negligent infliction of emotional distress claims. *See* Pl.'s Mot for Appropriate Relief [Dkt. # 62]; *see also* Pl.'s Reply [Dkt. # 66]. Defendants oppose the reinstatement of the negligence claims and also, on the basis of "clear error," ask the Court to reconsider its denial of Defendants' motion to dismiss the negligent infliction of emotional distress claims. *See* Defs.' Opp'n [Dkt. # 64] at 2.

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case. *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Revision may be permitted when the Court has "'patently

misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.'" *Singh*, 383 F. Supp. 2d at 101 (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)).

Plaintiff never filed motions for reconsideration of the Court's earlier dismissals of the negligence claims. He only raised the issue, woefully late, at the pretrial conference, when he finally clarified his various theories of liability. However, the Court finds that Defendants are not prejudiced because the current claims were all outstanding during the last six months of discovery and the relevant evidence was available for summary judgment motions. Questions regarding the intent and conduct of Officer Stathers and the use of his gun during the arrest of Mr. Rice have always been at issue in this case, as those matters are critical to all of Plaintiff's claims. Moreover, Defendants do not oppose Plaintiff's motion on grounds of prejudice.

Therefore, despite the late hour and in the interests of justice, the Court will grant the motion for reconsideration of the dismissals of Counts IV and V of the Amended Complaint, conditioned on Plaintiff having a qualified and appropriate expert witness on the applicable standard(s) of care.

Having further studied the Amended Complaint, in light of its own research, the Court concludes that it erred. Counts IV and V allege sufficient *negligent* action by Officer Stathers, separate and apart from the alleged excessive force and battery allegations:

> 64. Upon approaching Plaintiff attempting to flee out the back window, Officer Stathers shot Plaintiff, *negligently discharging his firearm,* to stop Plaintiff on mere suspicion of a crime simply because Plaintiff attempted to run away.

> 65. As a direct and proximate result of Officer Stathers' *negligent handling of his firearm*, Plaintiff suffered severe physical and substantial economic damages . . . .

Am. Compl. ¶¶ 64 & 65 (emphasis added). This alternative theory of liability must be allowed to proceed so long as (1) Plaintiff presents a qualified and appropriate expert witness on the applicable standard(s) of care, of whom Defendants have had notice, an expert report, and an opportunity to depose[5] and (2) Plaintiff presents sufficient evidence of negligence independent of his excessive force claim. *See Scales*, 973 A.2d at 731; *see also Reed v. District of Columbia*, 474 F. Supp. 2d 163, 173-74 (D.D.C. 2007) (a plaintiff has advanced a distinct claim of negligence where he alleges that a misperception of fact may have played a part in the decision to fire a weapon.)

This analysis does not save the negligent infliction of emotional distress claims. While Count XIV in the Amended Complaint is so titled, it alleges that Officer Stathers' conduct was "negligent and in deliberate disregard of a high degree of probability that emotional distress would result to Plaintiff" and was "extreme and outrageous." Am. Compl. ¶¶ 122, 123. Further, "[a]s a direct and proximate result of Officer Stathers' extreme and outrageous conduct, Plaintiff has suffered . . . ." *Id.* ¶ 124. "Deliberate disregard" and "extreme and outrageous" conduct are intentional, not negligent, acts. While Plaintiff includes the word "negligent" to describe the basis for Count XIV, his terminology throughout alleges only intentional acts. "[U]se of the terms 'careless and negligently,' without more, are conclusory and do not raise a cognizable claim of negligence." *District of Columbia v. Chinn*, 839 A.2d 701, 708 (D.C. 2003).

---

[5] Without an expert witness on the relevant standard(s) of care, Plaintiff cannot proceed on these negligence claims. *See Scales v. District of Columbia*, 973 A.2d 722, 730 (D.C. 2009) (expert testimony is required to prove the standard of care in case regarding excessive force and negligence by police).

Under D.C. law, the elements of a claim for negligent infliction of emotional distress are: (1) the plaintiff was in the zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for his own safety, and (4) the emotional distress so caused was serious and verifiable. *Estate of Manook v. Research Triangle Inst., Int'l & Unity Resources Grp.*, 693 F. Supp. 2d 4, 21 (D.D.C. 2010). "Serious and verifiable" means that the distress must have manifested in an external condition or physical symptoms. *Jones v. Howard Univ., Inc.*, 589 A.2d 419, 424 (D.C. 1991).

It is not enough, as Plaintiff argues, that each Count "begins by incorporating the allegations raised in all prior paragraphs of the complaint." Pl.'s Reply [Dkt. # 66] at 2. An individual count must contain a plausible recitation of enough facts to support it. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face"). The earlier allegation that Officer Stathers negligently used his weapon does not save a later count that alleges "deliberate disregard" and "extreme and outrageous" conduct and that does not allege negligence. Further, the Amended Complaint fails to allege the other elements of a negligent infliction of emotional distress claim. There are no allegations that Plaintiff feared for his own safety and suffered serious and verifiable distress as a result. This is another example of counsel's failure to distinguish the bases for Plaintiff's claims. The eve of trial is too late to amend the Complaint. Because Count XIV of the Amended Complaint does not distinguish between negligent and intentional acts, does not identify any specific act that was allegedly negligent, and fails to make out a claim of negligent infliction of emotional distress, the Count will be dismissed.

The Court also has reconsidered its ruling that Count XV, alleging negligent infliction

of emotional distress against the District of Columbia, can proceed. Count XV alleges:

> 126. Officer Stathers shot Plaintiff in the abdomen.
>
> 127. While Plaintiff was shot and injured, Metropolitan Police officers continuously yelled profanities at Plaintiff, demanding that he shut his mouth, despite the fact that Plaintiff was only indicating that he had been shot.
>
> 128. At no time did any of the Metropolitan Police officers on the scene attempt to administer first aid to Plaintiff.
>
> 129. This negligent conduct was perpetrated by the agents and employees of the District of Columbia and within the scope of their employment.
>
> 130. As a result of negligent conduct of Metropolitan Police officers, Plaintiff experienced severe emotional distress.

Am. Compl. ¶¶ 126-130.[6] The District convincingly argues that police officers owe no "duty of care" to avoid yelling profanities at an arrested suspect. *See Chinn*, 839 A.2d at 708 ("it is impossible to negligently commit assault"). Further, police officers owe no duty to administer medical aid to persons they have shot, given the risks of encountering blood-borne pathogens. *See Toy v. District of Columbia*, 549 A.2d 1, 5 n.7 (D.C. 1988) (trial court found that police have no duty to administer CPR and thereby risk exposure to infectious diseases). Because Count XV fails to allege an actionable claim of negligent infliction of emotional distress against the District of Columbia, it will be dismissed.

---

[6] Immediately after the shooting, Officer Stathers called for an ambulance, and emergency medical technicians soon arrived. *See* Defs.' Opp'n [Dkt. # 64], Ex. A1 (Stathers Dep.) at 43. Count XV, alleging negligent infliction of emotional distress against the District of Columbia, does *not* rely on any action by Officer Stathers. It merely mentions unidentified officers who yelled at Plaintiff and failed to administer first aid.

## III. CONCLUSION

As explained above, Plaintiff's motion to introduce medical bills [Dkt. # 60] will be denied. Plaintiff's motion for appropriate relief [Dkt. #62] will be granted in part and denied in part as follows: Counts IV and V alleging negligence against Officer Stathers and the District of Columbia will be reinstated, and Counts XIV and XV alleging negligent infliction of emotional distress against Officer Stathers and the District of Columbia will be dismissed. A memorializing Order accompanies this Memorandum Opinion.

Date: February 25, 2011 /s/
ROSEMARY M. COLLYER
United States District Judge