UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LARRY D. RICE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-310 (RMC) |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

On March 7, 2011, a jury rendered a verdict in this case, finding that Officer John Stathers was liable on claims of battery, negligence, and excessive force in violation of Mr. Rice's civil rights, resulting from an arrest and shooting of Mr. Rice on April 23, 2008. The District of Columbia conceded vicarious liablity on the battery and negligence claims. After the Clerk entered Judgment, Defendants filed a renewed motion for judgment as a matter of law or for a new trial on damages. As explained below, the Court will grant in part and deny in part Defendants' motion. The Judgment in favor of Mr. Rice will be vacated in part. Judgment as a matter of law on the negligence claim will be granted in favor of Defendants, and the damages awarded to Mr. Rice will be reduced accordingly. The request for a new trial will be denied.

**I. FACTS**

Plaintiff Larry Rice brought this suit alleging that he was shot without provocation on April 23, 2008, by Officer Stathers when he was arrested in an abandoned house located at 5827 Fields Place, NE, Washington, D.C. The house was known as a place for drug sales. Mr. Rice

testified that when he heard police officers enter the house, he quickly opened the window in a back room and began to climb out. Tr. Feb. 28, 2011 at 40-41. When he had managed to get his head and one leg out of the window, Officer Stathers entered the back room with his gun drawn. Mr. Rice testified that he continued to flee:

> I made it about almost out the window. I was set in the window and faced the officer as he came in the room, and he told me to get out of the window. And I set in the window, was getting ready to scoot out anyway. He grabbed my leg, and I was shot . . . .

*Id*. at 41. With his gun in one hand, Officer Stathers grabbed Mr. Rice's leg with his other hand and shot Mr. Rice in the abdomen. Tr. Mar. 1, 2011 at 18. Subsequently, Mr. Rice was arrested. Mr. Rice also contended that unnamed officers kicked and beat him while he was in handcuffs. Tr. Feb. 28, 2011 at 44.

At trial, Officer Stathers and Officer Derek Starliper testified to a different version of events.[1] Officer Stathers indicated that when he entered the back room of the abandoned house, he saw Mr. Rice attempting to hide behind a dresser. Tr. Mar. 2, 2011 at 55-56. He told Mr. Rice that he was a police officer and ordered Mr. Rice to show his hands. *Id*. Mr. Rice then lunged at Officer Stathers and attempted to take Officer Stathers's gun. *Id*. at 57-58. Officer Stathers testified Mr. Rice repeatedly attempted to grab Officer Stathers's gun and he had to shoot Mr. Rice in self defense. *Id.* at 57-61. The bullet hit Mr. Rice in the abdomen, and Mr. Rice crashed partially through a rear window. *Id*. at 60-61.

Officer Starliper testified that he saw Officer Stathers and Mr. Rice wrestling over the gun. Tr. Mar. 3, 2011 at 98-101. Sometime during the struggle, Officer Starliper exited the

---

[1] Officer Starliper was also a Defendant in this case, but the jury did not find him liable on any claim. His actions are no longer at issue.

house and rushed to the outside of the rear window as Mr. Rice broke through. Tr. Mar. 3, 2011 at 103. Officer Starliper pulled Mr. Rice through the window to the outside, placed him in handcuffs, and helped him walk to the front of the house. *Id*. at 110-14. Officer Stathers was then isolated from any further contact with Mr. Rice and activity at the scene, per standard police procedure. Tr. Mar. 2, 2011 at 62. An ambulance arrived shortly thereafter to take Mr. Rice to the hospital for medical treatment.

Due to the gunshot wound, Mr. Rice sustained severe injuries including a lacerated liver, diaphragm, and lung. He underwent emergency surgery and remained in the hospital for more than one month. Some weeks later, he returned to the hospital for additional surgery related to an abdominal infection that was caused by the gunshot wound.[2]

As a result of his injury, Mr. Rice filed this suit alleging twenty-one counts against various defendants. After a great deal of pretrial motion practice, the case proceeded to trial against Officers Stathers and Starliper and the District of Columbia on the following claims:

Count I – Battery (against Officer Stathers);

Count II – Battery (against Officer Starliper);

Count III – Battery (against the District of Columbia);

Count IV – Negligence (against Officer Stathers);

Count V – Negligence (against the District of Columbia);

Count XI – Intentional Infliction of Emotional Distress (against Officer Stathers);

---

[2] A criminal complaint was filed against Mr. Rice on May 2, 2008, charging him with a violation of D.C. Code § 22-851(b) (intimidating, impeding, interfering with and retaliating against a government official engaged in the performance of his duties). *See* Defs.' Mot. to Dismiss [Dkt. # 35], Ex. A (Criminal Compl.) at 1. On January 21, 2009, the Superior Court dismissed the felony charge at the request of the prosecutor. *See id*., Ex. B (Dismissal Praecipe).

Count XII – Intentional Infliction of Emotional Distress (against Officer Starliper);

Count XIII – Intentional Infliction of Emotional Distress (against the District of Columbia);

Count XIX – Violation of 4th Amendment right to be free from unreasonable seizure – arrest with excessive force pursuant to 42 U.S.C. § 1983 (against Officer Stathers);[3] and

Count XX – Violation of 4th Amendment right to be free from unreasonable seizure – arrest with excessive force pursuant to 42 U.S.C. § 1983 (against Officer Starliper).

Am. Compl. [Dkt. # 29].

Trial began on February 28, 2011 and concluded on March 7, 2011 when the jury rendered a verdict. During trial and after all the evidence had been submitted, Defendants orally moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a).[4] *See* Tr. Mar.

---

[3] The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause." U.S. Const. 4th Amend.

[4] Federal Rule of Civil Procedure 50(a) provides:

(a) Judgment as a Matter of Law.

(1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and

3, 2011 at 176-182. With regard to the negligence claim, Defendants argued that "plaintiff has not alleged nor produced any evidence that there is a distinct negligent act" and that "there's no distinct negligent act apart from the excessive force claim." *Id*. at 176-77. The Court denied the motion and submitted the claim to the jury. *Id*. at 181.

In addition to challenging the jury's finding of negligence, Defendants now contend that the jury verdict improperly awards Mr. Rice double recovery. During trial, Defendants requested a jury instruction explaining the prohibition against double recovery, and the Court included this instruction. *See* Tr. Mar. 2, 2011 at 183; Jury Instructions [Dkt. #80] at 48. Despite this instruction, Defendants argued that the Verdict Form improperly would allow for double recovery for a single injury; the Court disagreed. *See* Tr. Mar. 2, 2011 at 185 (Defendants proposed a different verdict form); Tr. Mar. 3, 2011 at 174 (Court found Defendants' proposed verdict form inadequate).

The jury found Officer Stathers liable on the claims of battery, negligence, and excessive force, but found him not liable for intentional infliction of emotional distress. Verdict [Dkt. # 78] at 1-2. The jury did not find Officer Starliper liable on any claim. *Id*. The jury awarded compensatory damages in the total amount of $440,208.05, and allocated this total among the legal claims on the Verdict Form as follows:

> **8.** If you have found that Larry Rice has proved by a preponderance of the evidence that he is entitled to compensatory damages, what compensatory damages do you award?
> $ 440,208.40

---

facts that entitle the movant to the judgment.
Fed. R. Civ. P. 50(a).

In allocating such compensatory damages:

**9.** If you have found that John Stathers or Derek Starliper violated Larry Rice's civil rights, what compensatory damages do you award to Larry Rice?
As to Officer Stathers $ 100,000
As to Officer Starliper $ 0

Of these compensatory damages what amount is awarded for medical expenses at the Washington Hospital Center?
As to Officer Stathers $ 10,208.05
As to Officer Starliper $ 0

**10.** If you have found that John Stathers or Derek Starliper committed an unlawful battery, what amount of compensatory damages do you award to Larry Rice?
As to Officer Stathers $ 150,000
As to Officer Starliper $ 0

Of these compensatory damages, what amount is awarded for medical expenses at the Washington Hospital Center?
As to Officer Stathers $ 15,000
As to Officer Starliper $ 0

. . . .

**12.** If you have found that John Stathers negligently caused harm to Larry Rice, what amount of compensatory damages do you award to Larry Rice?
$ 150,000

Of these compensatory damages, what amount is awarded for medical expenses at the Washington Hospital Center?
$ 15,000

*Id*. at 2-4 (italics omitted).

After the jury rendered the verdict, the Clerk entered Judgment. *See* Judgment [Dkt. # 81]. Now, Defendants have filed a renewed motion for judgment as a matter of law or for a new trial on damages.

## II. LEGAL STANDARD

Defendants filed a renewed motion for judgment as a matter of law under Federal

Rule of Civil Procedure 50(b). Rule 50(b) provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment — or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged — the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> > (1) allow judgment on the verdict, if the jury returned a verdict;
> >
> > (2) order a new trial; or
> >
> > (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).

The legal standard for granting a renewed motion for judgment as a matter of law is the same under Rule 50(b) as it is for a motion before entry of the verdict under Rule 50(a). *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007). That is, "a court should render judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) (citing Fed. R. Civ. P. 50(a)) (internal quotation marks omitted). Further, the standard for granting a Rule 50 motion is the same as the standard for summary judgment under Rule 56. *Reeves*, 530 U.S. at 150. Like summary judgment, on a motion for judgment as a matter of law the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence. *Id*. "[T]he court should view the record as a whole, but it must disregard all evidence favorable to the moving

party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, as least to the extent that the evidence comes from disinterested witnesses." *Id.* at 151 (internal citation omitted).

Because a post trial Rule 50(b) motion is limited to a renewal of a Rule 50(a) motion for judgment as a matter of law, the post trial motion is limited to those grounds that were specifically raised in the prior motion. *Thomas v. Mineta*, 310 F. Supp. 2d 198, 204 (D.D.C. 2004) (citing *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001)); *see also Whelan v. Abell*, 48 F.3d 1247, 1251 (D.C. Cir. 1995) (a movant who omits a theory from his Rule 50(a) motion waives the theory as the basis for a Rule 50(b) motion). Defendants raised at trial each of the issues addressed in their renewed motion, and thus the issues were properly preserved.

### III. ANALYSIS

#### A. Negligence Claim

Defendants move for judgment as a matter of law with regard to Mr. Rice's claim for negligence. Defendants assert that Mr. Rice did not claim, argue, or present evidence supporting a claim for negligence separate and apart from his claim for battery. The motion is well-founded.

In order to prevail on a negligence cause of action, a plaintiff must prove the applicable standard of care, that the defendant deviated from that standard, and that such deviation caused plaintiff's injury. *Scales v. Dist. of Columbia*, 973 A.2d 722, 730 (D.C. 2009). The applicable standard of care is that of a reasonably prudent police officer. *Smith v. Dist. of Columbia*, 882 A.2d 778, 788 (D.C. 2005). Expert testimony is required to prove this standard of care because this standard is "beyond the ken" of the average lay juror. *Id*. (quoting *Etheredge v. Dist. of*

*Columbia*, 635 A.2d 908, 917 (D.C. 1993)).

In contrast, in order to prove a claim of battery, a plaintiff must show that the defendant acted intentionally and that the intentional act caused harmful or offensive bodily contact. However, "[a] police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary." *Evans-Reid v. Dist. of Columbia*, 930 A.2d 930, 937 (D.C. 2007) (quoting *Jackson v. Dist. of Columbia*, 412 A.2d 948, 955 (D.C. 1980)). Moreover, an officer "is justified in using reasonable force to repel an actual assault, or if he reasonably believes he is in danger of bodily harm. Use of 'deadly force,' however, is lawful only if the user actually and reasonably believes, at the time such force is used, that he or she (or a third person) is in imminent peril of death or serious bodily harm." *Id*.

Thus, in police shooting cases, claims of negligence and battery are related but not identical. The question with respect to a battery claim is whether the officer shot the victim without legal justification. *Etheredge*, 635 A.2d at 918. The question with respect to the negligence claim is whether the officer failed to act as a reasonably prudent police officer would have acted under like circumstances. *Id*. "These are separate theories of liability which must be presented individually and founded on appropriate evidence. In other words, a plaintiff cannot seek to recover by 'dressing up the substance' of one claim . . . in the garments of another." *Sabir v. Dist. of Columbia*, 755 A.2d 449, 452 (D.C. 2000). A person cannot negligently commit an intentional tort. *Id*.

When a plaintiff alleges both negligence and intentional tort claims in connection with a police officer's intentional use of force, courts require that the negligence claim "must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart

from the use of excessive force itself and violative of a distinct standard of care." *Smith*, 882 A.2d 792 (citing *District of Columbia v. Chinn*, 839 A.2d 701, 710 (D.C. 2003)). A negligence claim that is not supported by evidence independent of excessive force should not be submitted to the jury. *Scales*, 973 A.2d at 731; *accord Sabir*, 755 A.2d at 452 (affirming directed verdict in favor of defendant on negligence claim that was not pled and proved separately from an excessive force claim).

Cases where the plaintiff pleaded and/or presented supporting evidence of negligence that was separate and distinct from a battery claim share these common factors: (1) the police officer used deadly force; (2) there was a police regulation that established a standard of care that was distinct from the excessive force standard; and (3) the parties presented two opposing factual scenarios, such as a police officer who claimed he shot in self defense because he believed that the victim was armed versus a plaintiff who claimed the victim of the shooting was non-threatening and unarmed. *Chinn*, 839 A.2d at 710-11. In other words, the cases that permit both battery and negligence claims to proceed involve alternate scenarios where "a distinct act of negligence, a misperception of fact, may have played a part in the decision to fire." *Id.* Usually, the "misperception of fact" in these cases is the officer's mistaken belief that he was dealing with someone who was armed. *See, e.g.*, *Dist. of Columbia v. Evans*, 644 A.2d 1008, 1021 (D.C. 1994) (plaintiff testified that she heard the police officer tell her son to "drop it" and then saw the officer shoot him; she testified that her son was unarmed); *Etheredge*, 635 A.2d at 916-17 (plaintiff presented evidence that he had attempted to comply with a police command to drop a non-existent gun when he was shot in the back).

In this case, the Amended Complaint set forth a bare bones allegation of negligence

against Officer Stathers as follows:

> 64. Upon approaching Plaintiff attempting to flee out the back window, Officer Stathers shot Plaintiff, *negligently discharging his firearm,* to stop Plaintiff on mere suspicion of a crime simply because Plaintiff attempted to run away.
>
> 65. As a direct and proximate result of Officer Stathers's *negligent handling of his firearm*, Plaintiff suffered severe physical and substantial economic damages . . . .

Am. Compl. [Dkt. # 29] ¶¶ 64 & 65 (emphasis added); *see also id*. ¶¶ 71, 73 (alleging that the District of Columbia is vicariously liable for Officer Stathers's alleged negligence).

At trial, Mr. Rice failed to articulate any negligence theory of liability that was separate and distinct from his claim of battery and failed to submit any evidence in support of a negligence claim. Mr. Rice did not submit evidence that Officer Stathers engaged in at least one "distinct act of negligence" that played a part in his decision to fire his gun. *See Chinn*, 839 A.2d at 710-11. Instead, Mr. Rice argued that Officer Stathers shot Mr. Rice and that Officer Stathers's action was not justified because Mr. Rice was unarmed and non-threatening. In his opening statement, Mr. Rice's counsel averred:

> Mr. Rice will tell you he got scared. He thought they were after him for whatever reason. He tried to run and jump out the window. There was a window in the back. As he was exiting the window, one foot — I believe he will testify — was outside, his back was toward the front of the window, facing in. Officer Stathers grabs his arm and shoots him in the abdomen.

Tr. Feb. 28, 2011 at 22. Mr. Rice testified that as he was fleeing out the window, Officer Stathers entered the room and shot him. Mr. Rice stated, "I set in the window, was getting ready to scoot out

anyway. He grabbed my leg, and I was shot . . . ." Tr. Feb. 28, 2011 at 41.[5]

During closing argument, Mr. Rice's counsel summarized the evidence presented as follows:

> [Mr. Rice] testified that when Officer Stathers entered the room Officer Stathers immediately approached him. He demanded him to freeze and at this point Mr. Rice was already trying to get out the window. Mr. Rice doesn't come back in the window at this point. Officer Stathers instead grabs Mr. Rice's legs with one hand, and with the other hand that his service was is in shoots Mr. Rice in the stomach. Mr. Rice was merely trying to swing his legs out from the inside of the window to the outside of the window. You heard him testify that he never lunged at Officer Stathers. You heard him testify that he never engaged in any type of physical altercation with any of the officers. You heard him testify that he never resisted arrest prior to or after he was handcuffed. You heard him testify that he only screamed out in pain, I'm shot, I'm shot.

Tr. Mar. 3, 2011 at 188.[6]

*In toto*, Mr. Rice's claim was that Officer Stathers grabbed him — in the arm or leg — and shot him in the stomach. Mr. Rice did not argue or provide evidence that Officer Stathers shot Mr. Rice because he mistakenly believed that Mr. Rice was armed. Instead, Mr. Rice claimed that Officer Stathers shot him intentionally. Officer Stathers agreed — he testified that he shot Mr.

---

[5] While it is the opinion of Mr. Rice's counsel that Officer Stathers shot Mr. Rice in order to prevent him from fleeing, Mr. Rice did not present any evidence in support of this theory. *See* Pl.'s Opp'n [Dkt. # 87] at 22 ("[Officer Stathers] negligently discharged his firearm to prevent Mr. Rice from fleeing . . . ."); *id*. at 25 ("A finding of liability under the negligence claim is supported by evidence of Officer Stathers's shooting of Plaintiff in an alleged attempt to prevent his 'escape' which was in violation of the Metropolitan Police Department's general order, G.O. 901.07.").

[6] Plaintiff's counsel misstated some of the facts presented in evidence. *See, e.g.*, Pl.'s Opp'n [Dkt. # 87] at 21 ("[A]t no time did any of the defendant officers observe Mr. Rice engage in any type of illegal conduct . . . .") In fact, the Officers had probable cause to arrest Mr. Rice for (1) trespassing due to his presence on the property at Field Place; (2) failing to comply with a police order, because Mr. Rice did not obey after Officer Stathers told him to stop; and (3) engaging in a drug transaction as observed by undercover officers. *See* Mem. Op. [Dkt. # 67] at 7-10.

Rice intentionally, but that the shooting was justified because he acted in self defense. Mr. Rice's claim that Officer Stathers intentionally shot Mr. Rice without legal justification is a battery claim; Mr. Rice presented no evidence, or even argument, in support of a distinct and separate negligence claim. Thus, judgment as a matter of law will be granted in favor of Defendants on the negligence claim. Because the jury allocated $165,000 in damages to the negligence claim, the damages award will be reduced by $165,000.

### B. Double Recovery

Defendants also move to alter the judgment and reduce damages on the theory that the jury's award for battery together with the award of violation of Mr. Rice's civil rights by use of excessive force constitutes an impermissible double recovery. They also argue that the jury erroneously awarded double recovery by awarding full compensatory damages and then adding damages attributable to the Washington Hospital Center bills. Defendants' double recovery arguments are based on a misinterpretation of Verdict Form.

Damages for the same injury may be recovered only once even though they are recoverable under two or more legal theories for two or more wrongs. *Franklin Inv. Co., Inc. v. Smith*, 383 A.2d 355, 358 (D.C. 1978); *accord Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1459 (10th Cir. 1997) (only one award can be made for a claim of injury under federal and state law claims that arise from the same facts and seek the same relief). "Where a jury awards duplicates damages, the court, either *sua sponte* or on motion of a party, should reduce the judgment by the amount of the duplication." *Mason*, 115 F.3d at 1459. "[C]ourts can and should preclude double recovery." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002).

### 1. Recovery for Battery and Use of Excessive Force

Defendants base their claim that Mr. Rice obtained double recovery for battery and the use of excessive force on the portion of the Verdict Form that stated:

> **9.** If you have found that John Stathers or Derek Starliper violated Larry Rice's civil rights, what *compensatory* damages do you award to Larry Rice?
>
> As to Officer Stathers $ 100,000
>
> . . . .
>
> **10.** If you have found that John Stathers or Derek Starliper committed an unlawful battery, what amount of *compensatory* damages do you award to Larry Rice?
>
> As to Officer Stathers $ 150,000

Verdict [Dkt. # 78] at 3 (emphasis in original).

The claim that Mr. Rice obtained double recovery for battery and violation of his civil rights is ill-founded, as it ignores the Verdict Form's prefatory question, question # 8, which asked the jury to calculate *total* damages. Question 8 asked:

> **8.** If you have found that Larry Rice has proved by a preponderance of the evidence that he is entitled to compensatory damages, what compensatory damages do you award?
>
> $ 440,208.40

*Id*. at 2. The Verdict Form then asked the jury to apportion those total damages among the claims and among the Defendants by stating at the end of question 8, and before question 9, "In allocating such compensatory damages: . . . " *Id*. at 3. All of the questions that follow question 8 constitute the jury's allotment of the total damages of $440,208.40.

The Court required the jury to allocate the damages because the potential liability of the individual Officers was not coincident with the potential liability of the District. Specifically,

-14-

the District of Columbia conceded vicarious liability on the tort claims of battery and negligence. Tr. Mar. 4, 2011 at 27; *see Dist. of Columbia v. White*, 442 A.2d 159, 162 n.7 (D.C. 1982) (the District of Columbia is vicariously liable for the intentional and negligent acts of its officers acting within the scope of their employment). The District, however, cannot be held liable for the constitutional torts of its officers. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978) (a city cannot be held vicariously liable for constitutional wrongs committed by its employees). Mr. Rice did not bring a civil rights claim directly against the District. Thus, the District could not be liable on Mr. Rice's civil rights claim alleging excessive force.

Further, the potential liability of the police officers was not the same. The Amended Complaint alleged that Officer Stathers shot Mr. Rice, and that both Officer Stathers and Starliper hit Mr. Rice in the head. Am. Compl. ¶¶ 26, 28.[7] The shooting and the kicking, if proven, would have resulted in differing injuries and differing damage amounts. Thus, the Verdict Form required the jury to find liability and damages separately against each police officer.

The award of damages for both excessive force and for battery does not amount to double recovery. The jury clearly found total compensatory damages in the amount $440,208.40 and then allocated such damages among the different legal claims and between the individual officers.

### 2. Recovery for Compensatory Damages Including Bills from the Washington Hospital Center

Defendants also argue that Mr. Rice obtained an improper windfall with regard to the Washington Hospital Center expenses. They insist that the jury misread the Verdict Form and *added* these hospital expenses to each legal claim when they should have *subtracted* them.

---

[7] Mr. Rice's trial testimony was that some unknown officer kicked him. Tr. Feb. 28, 2011 at 44.

Before trial, the Court held that Mr. Rice could recover the Washington Hospital Center medical expenses from the individual officers, but not from the District of Columbia. Those expenses could not be recovered against the District because the District had already paid via the D.C. Alliance Program, a program akin to Medicaid. *See* Mem. Op. [Dkt. # 69] at 2-3;[8] Tr. Feb. 28, 2011 at 4-5. However, the Court found that Mr. Rice could recover the amount of the Washington Hospital Center bills from the Officers. When a defendant is not the government entity who funded Medicaid, a Medicaid beneficiary/plaintiff can recover the amount that Medicaid paid for his treatment. Mem. Op. [Dkt. # 69] at 4. This is because a defendant is not permitted to avoid compensating his victim merely because the victim was able to qualify for Medicaid benefits. *Id.*

Hence, the jury was required to allocate liability for the Washington Hospital Center bills separately. The Court instructed the jury that "[i]f you find that plaintiff is entitled to any recovery for the medical expenses incurred at the Washington Hospital Center, you are instructed that he can recover no more than $40,208.05 for such expenses." Jury Instructions [Dkt. # 80] at 44. Because the District of Columbia could not be liable for these medical expenses, it was necessary to break them out from the total compensatory damages awarded. The jury found that Officer Stathers was liable for all of the Washington Hospital Center expenses and allocated such expenses among the three claims — use of excessive force, battery, and negligence.

The Verdict Form asked as to each legal claim, "If you have found that John Stathers or Derek Starliper [is liable on this claim] what compensatory damages do you award to Larry Rice?"

---

[8] Because these bills were not "expenses incurred" by Mr. Rice and because they were not a collateral source as to the District, Mr. Rice could not recover these expenses against the District. *See* Mem. Op. [Dkt. # 69] at 2-3 *(citing McAmis v. Wallace*, 980 F. Supp. 181, 185 (W.D. Va. 1997)) (*cited with approval in Hardi v. Mezzanotte*, 818 A.2d 974, 983 (D.C. 2003)).

— and then followed up with, "*Of these* compensatory damages what amount is awarded for medical expenses at the Washington Hospital Center?" Verdict at 3-4. Defendants assert that the Verdict Form did not tell the jurors to add the hospital expenses, but instead, by using the phrase "of these," asked them to subtract such expenses from the allocated amount. The problem with Defendants argument is that the jurors clearly awarded total compensatory damages in the amount $440,208.40. The jurors interpreted the phrase — "*Of these* compensatory damages" — to mean "of the *total* amount of compensatory damages." They divvied the total amount of damages, $440,208.40, among the claims. These facts do not demonstrate a double recovery windfall to Mr. Rice.

### C. Request for New Trial

As an alternative to their request for judgment as a matter of law, Defendants seek a new trial. Under Federal Rule of Civil Procedure 59, the court may grant a motion for a new trial on all or some of the issues and as to any party, after a jury trial, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Those reasons are: (1) where the verdict is against the weight of the evidence, *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 433 (1996),[9] or (2) "the trial was not fair, or substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions." *Nyman v. FDIC*, 967 F. Supp. 1562, 1569 (D.D.C. 1997). A new trial "should be granted only where the court is convinced that the jury verdict was a seriously erroneous result and where denial of the motion will

---

[9] When reviewing a motion for a new trial on the grounds that the jury's verdict was against the weight of the evidence, the "jury verdict stands 'unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict.'" *Czekalski v. Lahood*, 589 F.3d 449, 456 (D.C. Cir. 2009) (quoting *Curry v. District of Columbia*, 195 F.3d 654, 659 (D.C. Cir. 1999)).

result in a clear miscarriage of justice." *Martinez v. Dist. of Columbia*, 503 F. Supp. 2d 353, 355 (D.D.C. 2007) (quoting *Nyman*, 967 F. Supp. at 1569); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 467 F. Supp. 2d 74, 87 (D.D.C. 2006) ("Generally, a new trial may only be granted when a manifest error of law or fact is presented."). The standard for granting a new trial is not whether minor evidentiary errors were made but rather whether there was a clear miscarriage of justice. *Nyman*, 967 F. Supp. at 1569. The decision whether to grant a new trial falls within the discretion of the trial court. *McNeal v. Hi-Lo Powered Scaffolding, Inc.*, 836 F.2d 637, 646 (D.C. Cir. 1988).

Defendants do not claim that the verdict was against the weight of the evidence. Instead, they make the same claims in support of their request for new trial that they make in support of their request for judgment as a matter of law: (1) that the negligence claim was not separately pleaded and proven; and (2) that Mr. Rice obtained an improper double recovery. The remedy awarded by this Opinion and accompanying Order cures the injustice caused by the jury award on the negligence claim. Also, as explained above, the Court finds that there was no double recovery in this case. Thus, there was no error or miscarriage of justice that requires a new trial. Defendants' request for a new trial will be denied.

### IV. CONCLUSION

As explained above, Defendants' renewed motion for judgment as a matter of law or for new trial [Dkt. # 83] will be granted in part and denied in part. The Judgment [Dkt. # 81] will be vacated in part, with respect only to the negligence claim. Judgment as a matter of law will be granted to Defendants on the negligence claim, and the damages awarded to Mr. Rice will be reduced by $165,000, the amount attributable to the negligence claim. The remainder of the

Judgment stands undisturbed. The request for new trial will be denied. A memorializing Order accompanies this Memorandum Opinion.


Date: June 13, 2011                                     /s/
                                        ROSEMARY M. COLLYER
                                        United States District Judge